Good morning, and may it please the Court. I am James Young, and I represent Christine Cummings, six other named plaintiffs, and a class of approximately 37,000 non-union state employees of California. Plaintiffs below, Appellants, Napoles, and Cross Appellants in the three consolidated appeals, I would respectfully reserve five minutes for rebuttal. Unlike the prior appeals in this case, the issues in this appeal are fairly circumscribed. The 37,000 non-union state employees whose rights have been adjudicated to have been violated by defendant CSCA, a ruling which is unappealed and therefore final, seek on this appeal to obtain the same monetary relief provided to the other named class to the named class representatives, another ruling which is unappealed and therefore final, in the form of nominal damages. Further, all non-members seek an appropriately calculated award of constitutional violations perpetrated upon them by the union. Furthermore, the appeal and cross appeal, the second appeal and cross appeal, address issues related to the district court's award of attorneys' fees and costs. Both sides have appealed this award, however, and unless the Court has specific questions, it is my intention to rest upon the briefs for purposes of our cross appeal and address only CSCA's appeal from the award of attorneys' fees. With that having been said, let's first turn our attention to the award of the issue of nominal damages, which was denied, which were denied to absent class members. When the district court awarded nominal damages to the seven named plaintiffs, but denied an award to each and every class member, it cited as its reason the fact that the award sought would, in the aggregate, constitute substantial damages in violation of Supreme In denying this award to absent class members, this and these were nominal damages to which this Court has repeatedly held victims of substantial due or, excuse me, procedural due process violations are entitled, the district court created a group of second-class victims of constitutional wrongdoing, awarding them only lip service. The declaration that their rights had been violated by four separate union notices constitutionally inadequate under Hudson. What's the purpose of nominal damages? To, to, the purpose of nominal damages is to symbolize constitutional violations. Can't you symbolize it as much in $7 as $37,000 or whatever the figure is? Well, I don't believe so, Judge Sutton. If it's just symbolic, you could probably do it with a dollar overall, I guess, couldn't you? Well, the courts that have addressed this issue, at least the district courts, have all said that it must be symbolized by an award to each and every class member. At least three courts have held that, the Abrams Court in the District of Columbia, the Ho Court in Pennsylvania, and the Northern District of California, Judge Patel in the Wagner case. Has any circuit court held that? No, Your Honor. No, I don't know that this, I don't know that any union has ever had the courage to raise this issue. I don't know that any court has ever before denied, it's not at all clear that any court has ever denied the award of nominal damages to absent class members in a case where that has been an award. Certainly none of the cases cited by the union in its briefs clearly stand for that proposition. And indeed, at least two courts have reviewed decisions and expressed no problem with it. I mean, I think Ho specifically, in my opinion, Ho specifically affirmed the award of nominal damages to all class members. This court reviewed Wagner and noted the fact that nominal damages had been awarded to absent class members in that case. Was the specific issue raised in the three cases you're relying on? It was not raised in Wagner. The award of nominal damages seems to have been raised in Ho. At least that's the way I read the decision. And the court there held what? The court affirmed the award of nominal damages to each class member. To each class member. To each class member. The court specifically said that. Now, the decision in Abrams was never appealed. So we don't know what the appeals court would have done on that, Judge Alicorn. Did the – what authority did the court rely upon in saying that each class member was entitled to nominal damages? I think – well, I don't think the court particularly relied on authority. I think the court reasoned it from the principle that each individual suffered damage. And in Abrams, certainly, that – I think that's probably the decision that's closest to this Court's reasoning on the notion that notice is the injury. From the Prescott decision and other decisions, Foster included, the Abrams court awarded one dollar for each of seven constitution – seven years of constitutionally inadequate fee seizures. Each – one dollar for each of seven constitutionally inadequate notices that were promulgated by the Communications Workers of America. So that's probably the decision that's closest on our request for a dollar representing each separate violation. What's the standard of review here for this? We believe that this is a legal question. Entitlement to damages for each class member, we believe, is clearly a question that is subject to the court's de novo review. This was adjudicated on summary judgment. This isn't a calculation of damages issue. This is a fundamental legal question. But Judge Seiler's point was, you know, if this is symbolic, why doesn't the judge have discretion to fashion a symbol that he or she sees fit? Well, I think, Judge Silverman, if we were talking about the difference between symbolizing it with a dollar or a hundred dollars, as in the Williams case where the Fifth Circuit affirmed an award of nominal damages of up to a hundred dollars, I think then we might be talking about something that gets closer to the abuse of discretion standard. But here, where you're talking about a symbol which is supposed to be presented to each victim, at least as I understand the law, and I understand Kerry v. Pifus and all of the Supreme Court decision-making on this issue, and the Rules Enabling Act, then I think you're talking about a legal standard. The problem here is that the district court essentially created a second class, and second class with all of the negative connotations that go along with attributing to a group or an individual second class status. These people could have brought individual actions were this case not brought as a class action. They each could have sued. And frankly, they could have sued in virtually any court in the State of California. We're talking about a class of 37,000 State employees. I'm sure they were – I'm sure that some of them reside in every Federal district. It's almost certain that some of them reside in every city and county in the State of California. Each of them could have brought an individual action. And in each of those cases, under this circuit's law, each of those individuals would have been entitled to an award of nominal damages for the violations of their procedural due process rights. So by denying to absent class members nominal damages, the district court in effect extinguished those rights by virtue of its ruling against them. And so – Could it come to a point where the nominal damages to each member of a class would be so large that it would cease to be nominal? Not to the – not – well, perhaps to the – I think if you look at it from the perspective of the individual, yeah, yes, I think, Judge Sullivan, you're correct. It could. But the problem with this analysis – the analysis that the district court applied is that it came at this question from precisely the wrong – the wrong perspective. It came at it from the – and I understand why the union argued this case, but – argued this point. But it's certainly a principle that is extraordinarily narcissistic. Instead of looking at the victim of the wrongdoing, we look to the wrongdoer and decide that somehow it's punitive. It's precisely the kind – the same analysis the Seventh Circuit rejected in the case – in the case of an amicus argued, and the Seventh Circuit addressed the amicus point, that the union was somehow immune from an award of attorney's fees. It was some kind of union exception to normal principles of law. And in this case, the union is in essence arguing, well, this hurts us. So therefore, you shouldn't award it. Well, they don't say it hurts us. They say that's just the nature of nominal damage. It's – it's – From their perspective. But does the court – when the court has adjudicated constitutional wrongdoing, does it award damages based on the wrongdoer's problems with the award, or does it address the wronged? And that – I think that's the whole purpose of litigation, any tort litigation, and civil rights tort litigation in particular. The point is to address the wronged. And here, the wronged, at least 36,993 of them, take nothing. Only the seven named plaintiffs take anything. The problem is here that it defies the Rules Enabling Act bar on diminishing substantive rights because you can't – I don't think the court can get around the fact that each of these individuals had an individual claim for violation of rights. And the district court's ruling, in effect, extinguished that claim. I mean, the – I don't think there's any serious dispute either by the – in fact, by the union or in any of the decision-making of this court that a procedural due process violation entitles one to at least nominal damages. And if – that principle, I don't think, can be diminished if a party comes in, having victimized a large class of individuals, and you say, well, we can avoid it. I mean, the problem is the incentives that would be created under these circumstances would be perverse. Instead of me or my – one of my colleagues or other attorneys coming in and saying, well, we have a large class here, we should – we should certify a class because of all reasons under Rule 23, it's the tortfeasor who's going to come in. Because if it's not a class action, all of those individuals are going to have individual claims and there's going to be – you're going to incentivize a huge drain on judicial resources. The problem with this ruling is that it – it frustrates the essential purpose of class litigation, to render manageable litigation that involves numerous members of a homogenous class who would all otherwise have access to the court through individual lawsuits. By denying the relief to which this court has held all victims of violations of procedural due process due, the district court defeats that purpose with the potential to create that huge burden for the courts. Aside from these practical reasons for reversing the district court's ruling below, it must be reversed because it stands utterly alone. Now, granted, none of the cases we cited on this point are controlling in this circuit. Certainly Ho and Abrams and even Wagner isn't controlling. It's – they're persuasive, to be sure. But what is controlling is the Rules Enabling Act, and it's guaranteed that the rules enacted under it cannot, in effect, abridge or modify any substantive right. This Court has held, uncontrovertedly, that nominal – victims of procedural due process are entitled to nominal damages. Coupling that with the Rules Enabling Act's prohibition, the decision below denies substantive rights by application of Rule 23, and that cannot stand. By virtue of that ruling, Rule 23 has become an instrument by which the absent class member's substantive right to an award, even a small award, was not only abridged or modified, but was extinguished altogether. Taking the point that some of you – some of the panel raised in its earlier questions, to be sure that I suppose there is a point where nominal damages aggregated together becomes substantial to the person who has to pay them out. But A, they're not substantial to the individuals who are receiving them, and B, if harm becomes the question, well, even paying a dollar hurts a little, let's face it, it's an economic harm. Any economist will tell you that. It's a minimal economic harm, but it is economic harm. So at that point, do we say, well, okay, they're substantial enough. Then we're just talking about a question of degree, and I don't think that application of Rule 23, coupled with the Rules Enabling Act, permits that type of analysis where you're talking about substantial – defendant CSCA was lucky enough to have a large victim and to profit handsomely from having that large victim. I mean, if the union is going to argue that it's substantial, then it seems to me it's important for this Court to measure that against the benefit derived by the union from its behavior. And that benefit was huge, huge in comparison to what we seek, whether it is $1 for each class member or up to $17 for each class member for each separate violation. Is there any floor at which you can – you're required to set a nominal damage figure like $1, or could the district court set a one cent for each of your plans? I think the district court was probably sound in its analysis on that. One cent would probably be – would trivialize the issue too much. $1 is not very much anymore, either, is it, Court? Less than it was even when Hudson was decided, Judge Seiler. But that is the world we live in with the law that we are – with the decisions in this case. The prior panel held that these people weren't entitled to refunds because the union cured its problems early enough. Therefore – but as I said, they're only entitled to nominal damages at most. So – but the question becomes representative capacity versus the symbolism. Do we trivialize the – do we trivialize the rights at issue by denying to absent class members? These people probably didn't even get the piece of paper, the judgment that said the And the notion that – one of the notions raised below, and I think it's worth probably considering at this time, is the problems with distribution. Oh, it's going to cost us so much to distribute $1 or $17 to absent class members. This – it is almost certain that for most members of the class, these are people still employed by the State of California, people who are still subject to fee seizures. To refund the money to them, all the union has to do is tell the State of California to take less one month. So that's really a red herring that was thrown into this analysis. We've got about four minutes left. You said you wanted to reserve time. Yes. I would have liked to have addressed the issue of attorney's fees, but I think we'll submit that in the brief. We'll respond to the union's arguments accordingly. Thank you, Justice. Thank you, Mr. Young. Morning. Good morning. May it please the Court, I'm Eileen Goldsmith from Altshuler-Burzon for the California State Employees Association. Could you talk just a little louder, please? I'm having a hard time hearing today. Sure. I will pick up with the nominal damages first, and then move on to the fees. That mic is to record for the future. It's not this. Oh, you're not hearing. Oh, I'm sorry. That's better. Go ahead. Okay. Is this better? I want to start with the question of what the symbolism is in the nominal damages. The symbolism isn't the dollar. The symbolism is the union having to open up its wallet and take something out and give it to the plaintiffs. And so that's the baseline in Cary. The nominal damages are to be symbolic relief when there's no entitlement to compensatory damages. What's the significance of the fact that the class is certified? I mean, isn't the die cast once the class is certified, every member of the class who's nominal damages? The class did get an award of nominal damages. They were awarded nominal damages to the class through their class representatives in their representative capacity. How does a class member collect that? It really doesn't matter that much. It's not... Well, it matters to the class members, maybe. Nobody would be litigating this case just for a dollar. I think we all have to recognize that as a practical matter. What plaintiffs were really litigating this case for was compensatory damages. Nobody's sitting there waiting for their dollar. That's not what's important. What's important is the union has to hand over some money to the plaintiffs. And so the question of how you calculate that amount has to be consistent with Cary. And... Don't we have to start with what is the purpose of the nominal damage? The purpose of the nominal damage is to vindicate violation of the constitutional right, whether there has been compensatory damages or not. Isn't that true? Yes. And the dollar... Or the class members' rights under the Constitution vindicated if they get zero. How plaintiffs' class representatives choose to distribute that money to the class is really up to them. The... Zero from the defendant. The defendant has been compelled to hand something over to the class. Seven dollars. Yes. And plaintiffs here were asking for $629,000. $629,000 is not nominal damages by any stretch of the imagination. What about $37,000? $37,000 is also, it's too high. It's substantial. It violates Cary. Isn't that a dollar apiece for 37,000 plaintiffs? Yes, it is. The problem with that dollar apiece, there's really two problems with that. The first problem is that, is the premise that each of them is entitled to at least a dollar. It's not necessary to award a dollar every time you award nominal damages. If they each sued you, would they each get a dollar? If they each sued you individually? If that were to happen, that might be the outcome. But like I said, nobody would ask that. What's the point of having a class action? I mean, they're worse off proceeding as a class action than they would be if they sued you individually. By proceeding as a class action, they were able to litigate for the remedy that they really wanted to get, which was the compensatory damages. It turns out that they weren't entitled to that remedy. Well, I mean, they wanted whatever they're entitled to. I mean, if they're entitled to compensatory damages, they want that. If they're entitled only to nominal damages, they want that. I mean, why aren't they entitled to whatever they're entitled to? Well, the first point is that they're not each entitled to a dollar. It's a final vindication for the violation of their constitutional rights. The vindication can be a dollar or it can be any other de minimis amount. That's what this Court said in Morales. That's because it's not the dollar that's so important. It's the symbolic recognition. And by the awarding of damages, nominal damages. By the awarding of damages. Look, the class representatives have put themselves forward as stand-ins for the class throughout the litigation. The Court has approved them in that capacity. And there are many, many doctrines that we discussed in the brief that rely on them as basically symbolic stand-ins. What the district court did here was come up actually with a rather elegant solution to the question of how you award nominal damages in a large section 1983 class action. Suppose there had been just one class representative. Would it have been $1? It could have been $1, yes. Two class representatives, $2. I mean, that's kind of arbitrary. What you call elegant strikes me as just kind of the happenstance of how many people were on the caption. That's true. I mean, in this case, it could have been $1, period. That's part of the district court's discretion right there. As long as the district court is under the ceiling of what is substantial in crafting that nominal damages award, it has a lot of discretion. What is the standard of review here? The plaintiffs say it's de novo. What do you say it is? Well, I think the question of this issue, whether the nominal damages were proper. The class did get an award of nominal damages. I think that would be the issue that is de novo. Were they entitled to nominal damages? Yes, and they got nominal damages. You say that's de novo, it's not an abuse of discretion. How much nominal damages they're entitled to, that's a matter of abuse of discretion. I did want to touch on the point. The point against Pythos doesn't really help us on that question, does it? Kerry doesn't address the class action question now. It said that each of the plaintiffs was only entitled to nominal damages. That's correct. Yes. If that's the question of law, isn't each plaintiff here entitled to nominal damages if that plaintiff cannot prove compensatory damages? As I've been saying, the class did get an award of nominal damages. And the rule that they're asking to adopt is a rule that is inevitably going to run afoul of Kerry in a great many cases. How can it run afoul of it? It says Kerry wasn't a class action. Kerry sets the standard that nominal damages can't be substantial. Oh, it says you can't award substantial damages if you can't prove injury. That's correct. Other than the violation of the constitutional right. That's correct. And it also says that you can't award substantial damages. You can only award substantial damages to compensate actual injury or to punish or deter misconduct. If you adopt the rule that plaintiffs are asking you to adopt here, you're going to turn nominal damages into punitive damages in cases where there is no entitlement to punitive damages. Well, I guess it depends upon how big the class is, too, doesn't it, if you have a class of 20, at least. If you have a class of 20, it might not be so bad. If you have a class of 20, it might not get certified either. That's why I say the whole point is once it's certified, it seems to me your goose is cooked. I mean, everybody in the class, that's the point of the class action. Everybody who's in the class will get whatever damage he or she is entitled to. And the point is that they're not entitled to a dollar apiece, as I've been trying to make this point. They're entitled to de minimis relief. And they're entitled to symbolic relief. They got that symbolic relief. And if you do turn, if you do adopt the rule that each plaintiff in a class action is entitled to a dollar in nominal damages, you will turn it into punitive damages. In this case, there was no entitlement to punitive damages. There was no entitlement to compensatory damages. And plaintiffs are here trying to get basically through the back door what they couldn't get from the first panel through the front door. Could you explain how that would turn it into punitive damages? That brings me to the point that I wanted to address, which is whose perspective do you analyze nominal damages from? It has to be objective. It has to be objective because otherwise it is going to become punitive damages. Again, the symbolism is the defendant handing something over. It's not how much the defendant hands over. We cited the First Circuit case, Magnet v. Pelletier, which discussed a nominal damages award of $500 against a single defendant and knocked that down to a dollar because it would have been a substantial amount to that defendant. So unless it's objectively nominal, unless the amount of the award is objectively nominal, it's going to become a back doorway to get punitive damages. Isn't vindication of a constitutional right objectively nominal? The amount has to be objectively nominal. The symbolism is there. Well, it has to be nominal. The symbolism is there with the nominal amount. That's the principle that Cary stands for. And Cary says each plaintiff is entitled to it. Cary doesn't consider the class action situation. This Court has to make sure that the nominal damages award is consistent with the principles in Cary, which are that nominal damages are not substantial and they're not punitive and they're not compensatory. The symbolism, plaintiffs got the symbolism that they were entitled to in the nominal damages award here. I'd like to move on to the fees. Most of what the District Court did here was just fine, but there are a few issues that we wanted to discuss. First of all, there's simply no basis in the law for awarding attorneys' fees for the work done on the first appeal. The Ninth Circuit's rule is very clear that requests for fees for work done on appeal are brought to this Court first, not to the District Court. And there's a good reason for that. The first panel, Judge Hawkins, Judge Graber, Judge Tallman, they saw the work done on the first appeal. They were the closest to it. The rule ensures that they get the first crack at a fee award, if any is appropriate. The District Court basically nullified the Ninth Circuit rule and took that decision away from the panel. And there's no basis for what it did, and that part of the fee award should just be struck. Did the District Court acknowledge that the Ninth Circuit should have had the first go of it, or did they ignore that? The District Court discussed the Ninth Circuit rule and then said, we recognize that plaintiffs didn't go to the Ninth Circuit first, as the Ninth Circuit requires, but we're going to award the fees anyway. Basically what the District Court did was nullify the rule. There was no escape hatch from that rule. And there's really no dispute that plaintiffs didn't comply with it. With respect to the remainder of the fee award, our argument is that the fees awarded for work done prior to the first appeal simply doesn't comply with Hensley. Hensley provides that the fee award has to be reasonable in light of the results obtained. And what the District Court here did was not adequately mindful of the results obtained. There's a two-step analysis under Hensley, first to segregate out the hours on which plaintiff is not the prevailing party and hours which are not related to claims on which plaintiff was the prevailing party. And you don't count those. Second step is to consider what's left in light of the results obtained. So that means we have to look at what plaintiffs asked for and what they ultimately got out of this litigation. And this is really all in the opinion from the first panel. Plaintiffs wanted the auditor's report in the Hudson Notice. What they got was a line in the opinion saying that the auditor's verification, but not necessarily the full audit report, have to be in the notice. They wanted an allocation audit. They don't get that. They challenged a couple of expenditures as not chargeable to the fee payers. They didn't get that. The District Court properly separated out the hours that were related to that. They challenged the indemnification clauses in the union's collective bargaining agreements with the state. They didn't get that. They sought a permanent injunction. They didn't get that. They sought judgment against the state defendants. They didn't get that. And throughout this case, they were seeking very substantial monetary relief, $14 million in compensatory damages. They sought that in the District Court, in this Court, from the Supreme Court. They didn't get it anywhere. They ended up with a compensatory damages award of zero. And now they're back here trying to undermine that ruling on merits and get in nominal damages some part of that compensatory damages award back. We agree with them that the nominal damage award is wrong, that as a matter of law every member of the class who's been nominally injured is entitled to nominal damage. Then we also have to set aside the attorney's fees award, too, don't we, have the judge recompute the fees? That would probably be appropriate, yes. But the point here is that not only is there no basis for setting aside the nominal damages award, but plaintiffs really got a tiny sliver of what they were seeking out of this litigation. They got the line in the first opinion that the auditor's verification has to be in the Hudson notice. Basically what that means is that the union's notice was defective because there wasn't a signature from the auditor on it saying these are my numbers. It's a pretty technical result for them. And so awarding them 25, compensating them for 25 percent of their hours for the work done up until the first appeal just doesn't adequately consider that result. Moreover, the way the district court got to that 25 percent with due respect to the district court just didn't really make any sense at all. What the district court did was look at the 50 percent of hours that it thought were compensable to some extent. After having separated out the chargeability claim, it couldn't separate out those other 50 percent of hours based on plaintiff's time records. So it took that 50 percent and it took this ratio of monetary relief sought to monetary relief obtained, which of course is very tiny, and purported to average them. And ended up with 25 percent. The problem is that you're averaging two measurements that measure totally different things. What we proposed instead would be an award that would adequately reflect the very limited results obtained by plaintiffs in the case, which would be to compensate 5 percent of that 50 percent of hours. The last point I wanted to move on to was the fees for work done after remand. The parts that the union is appealing are fees for the form of the final judgment and the second fee petition, the fees on fees there. With respect to the form of the final judgment, there was only one disputed issue there and it's an issue that plaintiffs did not prevail on. The issue that was litigated was whether the district court should reinstate certain of its prior rulings in the final judgment. And the union briefed us and the union showed that those rulings should not be reinstated because they in fact conflicted with the first panel's decision in this case. So plaintiffs didn't prevail on that. It wasn't related to any work that they did on the merits on which they did prevail. And it was after all of the last benefits were won for the class. So that should be simply struck from the fee award also. And then finally, with respect to the second fee petition, any award on the second fee petition should be consistent with the merits award. So here at this point, the district court compensated plaintiffs for 37 percent of their hours spent on the second fee petition. That does relate back to all of the work in the case. And then finally, the district court compensated plaintiffs for the total amount of fees that were obtained. So therefore, some modest amount of fees on fees is appropriate. We would submit that the same 5 percent that represents the results obtained would be appropriate for the fees on fees. I have one more point on the nominal damages that I wanted to come back to. And this is about the other agency fee cases in which nominal damages have been awarded to each class member. In none of those, neither in Wagner nor in Ho, is there any discussion of Kerry v. Plaintiffs and how that would implicate the structure of the nominal damages award. And in Wagner, the issue actually wasn't even appealed. So I would say that Abrams, Ho, and Wagner are really not persuasive authority for anything. And with that, I'll submit. Thank you, Ms. Filsbeth. Mr. Young, you've got about three minutes and change. Thank you, Judge Silverman. I'd first like to deal with the issue of attorney's fees because so desperate is the CSCA to belittle the results obtained in this litigation that they actually cross over into being somewhat disingenuous. I have to draw the Court's attention to page 7 of their brief where it says, Well, sufficient under the day is the evil thereof. There was no audit. So there wasn't any question as to whether what the quality of the audit was. It was a question of what the audit was. That's the kind of argument we've got on this issue. The question is, it ignores the substantial success that we obtained in this litigation. To be sure, did we get everything we want? No. Not close monetarily. But we did obtain substantial relief. The union's argument is a blunderbuss attack. It's virtually the same attack that every civil rights defendant makes in light of Farrar v. where a party doesn't obtain every jot and tittle that they sought in their initial complaint. It misrepresents the nature and character of this lawsuit, which is it from its first primarily sought declaratory injunctive relief for the class as a whole. This is clear and was recognized by the district court when it certified this case under 23b-2, which authorizes class actions when, and I quote, the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Unquote. CSEA's argument is also to say disregard of the major victories obtained by the nonmembers and form the basis for the district court's exercise of its discretion in awarding 42 percent of the fees sought. What precisely did we achieve? We obtained a preliminary injunction and certification of a class of 37,000 employees. As a result of that preliminary injunction, the union issued two new notices attempting to bring itself into compliance with Hudson. Why? To avoid the effect of the preliminary injunction. It was quite a sensible strategy. The nonmembers obtained final summary judgment that CSEA's four notices were constitutionally inadequate, which means that, as the district court found, fees should be awarded for time expended on the unsuccessful TRO motion and the second preliminary injunction motion. We initiated the argument that their piecemeal approach was inappropriate on the preliminary injunction argument. The district court said, I don't think you've made your showing of the likelihood of success on the merits. You might still prevail, but you didn't make that showing. Well, we did ultimately succeed on the merits, but that time is certainly compensable. Third, the 37,000, and this is, I think, the most important point because it's all the union says these people are entitled to. The 37,000 nonmembers obtained a constitutionally adequate fifth notice in May of 2000 with the opportunity to object proactively. Now, to say that no financial benefit was gained is kind of a red herring, another red herring. Financial benefit was gained by those who chose to object. Now, is that quantified in the record? No, it's not. Because the union did it under the threat of the litigation, under the court's guidance, the district court's guidance. And that's something the district court specifically said. The union frequently invokes the good faith phrases from the record in this case. But what they rarely say is that the district court put it definitively in a good faith effort under the court's direction. And that's the results obtained here. If I may just turn just briefly. You're out of time, Mr. Young. Thank you. Thank you. The case just argued is submitted. We'll stand at recess for the morning. Thank you.
judges: Alarcon, Siler , Silverman